# Supreme Court of Texas

No. 23-0671

Cale Andrew Clifton, Christopher Matthew Clifton, Pamela
Parker Clifton, COG Operating, LLC, Desert Partners IV, LP,
Kelli Clifton Gossmann, Lambert Land Co., LLC, Viper Energy
Partners LP, McCamey Farm & Ranch, LP, Kathy Parker in her
capacity as independent executor of the estate of J. Loyd Parker,
III, Springwood Mineral 4, LP, Robin Lee Young, Young Oil and
Gas, LP and Lake Ranch, LP,

*Petitioners*,

v.

Scott W. Johnson and Florence H. Cummings,

*Respondents*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued December 2, 2025**

JUSTICE YOUNG delivered the opinion of the Court.

This oil-and-gas case involves the two issues addressed in *Van Dyke
v. Navigator Group*, 668 S.W.3d 353 (Tex. 2023)—double fractions and the
presumed-grant doctrine. The parties dispute whether a 1951 deed's use of
"1/128 (1/16 of the usual 1/8 royalty)" refers to a fixed 1/128 interest (as the

parties to the deed and their successors apparently recognized for about 70 years) or a floating 1/16 interest (as no one ever asserted until the plaintiffs in this case did in 2020). When "1/8" is part of a double fraction in an antiquated mineral conveyance, courts presume that it refers to the entire interest. But *Van Dyke* repeatedly emphasized that this "presumption is readily and genuinely rebuttable." *Id.* at 364. We hold that this deed's plain language rebuts the presumption by showing that the parties used 1/8 for its ordinary numerical value, not as a term of art. Because the court of appeals held otherwise, we reverse its judgment and reinstate the trial court's summary judgment that the deed conveyed a fixed 1/128 interest.

**I**

In May 1951, J.B. Young, Elizabeth Cornell, and H.D. Cornell executed a deed with Y.H. Holcombe and Dr. J. Marvin Rape. At the top of the document, someone crossed out the typewritten "Mineral Deed" and handwrote "Royalty Deed." The deed conveyed "an undivided one-one hundred and twenty-eighth (1/128) interest in and to all of the oil, gas and other minerals in and under" described tracts of land in Reeves County. The deed further provided:

> It is understood and herein stipulated that said land is under oil and gas leases providing for a royalty of 1/8 of the oil and certain royalties or rentals for gas and other minerals and that Grantees herein shall received [sic] one-sixteenth (1/16) of the royalties provided for in said lease insofar as the same cover the above described land, but Grantees shall have no interest in or be entitled to nor be entitled to receive any part of any rentals paid under said leases, nor shall the Grantees have any interest in any bonus money received by the Grantors, their heirs or assigns, in any future lease or leases given on said land or any part thereof, and it shall not be

2

necessary for the Grantees to join any such subsequent lease or leases so made; that Grantees shall only receive under such subsequent lease or leases a 1/128 (1/16 of the usual 1/8 royalty) part of all of the oil, gas and other minerals taken and saved under such lease or leases and Grantees shall receive same out of the royalty provided for in such lease or leases.

The deed then stated that the grantors will "warrant and forever defend all and singular the said royalty interest herein conveyed."

For seven decades following the deed's execution, the grantees and their successors received a fixed 1/128 royalty without any dispute among the parties. Not until 2020 did Johnson, a successor of Holcombe and Rape, claim otherwise. He sued the Cliftons, successors of the Cornells, for a declaratory judgment that, if granted, would mean that everyone had misunderstood the deed all along. Instead of a fixed 1/128 royalty, Johnson claimed, the deed had always provided for a floating 1/16 nonparticipating royalty interest.

The trial court denied Johnson's motion for summary judgment and granted the Cliftons', thus declaring what everyone had assumed for nearly three quarters of a century: that the deed conveyed a fixed 1/128 royalty interest. The court rendered final judgment accordingly.

Johnson appealed in July 2022. This Court decided *Van Dyke* in February 2023; after rehearing was denied, the mandate issued in June 2023. The very next month, the court of appeals decided the appeal in this case, and its decision turned heavily on the first issue resolved in *Van Dyke*—the double-fraction presumption. Focusing on the double-fraction language in the future-lease provision, the court of appeals reasoned that the *Van Dyke* presumption applied to the lease language. 719 S.W.3d 270, 285–87 (Tex. App.—El Paso 2023). Specifically, the court held that

3

describing the future-lease interest as "1/128 (1/16 of the usual 1/8 royalty)" invoked *Van Dyke*'s "presumption that the Grantors believed they only retained a 1/8th interest in the mineral estate," and that a 1/16 floating royalty was therefore conveyed. *Id.* at 285–86 (applying *Van Dyke*, 668 S.W.3d at 359). Because the leases here were future leases covered by the double-fraction language, the court held that Johnson was entitled to a floating 1/16 royalty instead of the fixed 1/128 royalty that had been received for nearly 70 years. *Id.* at 287.

Next, despite recognizing *Van Dyke*'s clarification of the presumed-grant doctrine, the court of appeals refused to apply it. *Id.* at 287–88. The court held that the Cliftons forfeited any reliance on that doctrine by failing to raise it in the trial court and in their appellate briefs. *Id.* at 288 (citing Tex. R. Civ. P. 94). The court acknowledged, though, that the Cliftons made their arguments "[i]n letter briefs filed after the Texas Supreme Court issued its opinion in *Van Dyke*." *Id.* at 287. The court therefore did not reach the merits of the Cliftons' presumed-grant arguments, and it further refused to remand the case to the trial court in the interest of justice despite *Van Dyke*'s intervening clarification of the doctrine's elements. *Id.* at 288. Concluding that the Cliftons forfeited "their right to raise this issue," the court reversed the trial court's judgment in the Cliftons' favor and remanded for further proceedings. *Id.*

The Cliftons challenge the application of the *Van Dyke* presumption to the deed but assert that, at a minimum, we should remand in the interest of justice for the trial court to consider the presumed-grant doctrine. We granted their petition for review.

4

## II

### A

The court of appeals applied *Van Dyke*'s double-fraction presumption to hold that "1/128 (1/16 of the usual 1/8 royalty)" referred to a floating 1/16 royalty interest. *Id.* at 284–87. Our disagreement with the court of appeals lies in our conclusion that the deed's text rebuts the *Van Dyke* presumption.

"A mineral estate consists of five interests: 1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, 4) the right to receive delay rentals, and 5) the right to receive royalty payments." *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995) (citing *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986)). "A conveyance of a mineral estate need not dispose of all interests; individual interests can be held back, or reserved, in the grantor." *Id.* As in our interpretation of any contract or deed, we are primarily concerned with the parties' intended meaning as expressed in the text they adopted. *Van Dyke*, 668 S.W.3d at 361. We recognize that "conveying instruments in fraction-of-royalty cases tend to be more complex than in the fractional royalty cases, with apparently contradictory or inconsistent terms that courts must harmonize, if possible, to give effect to all the words and the intent of the parties as expressed in the instrument." *Hysaw v. Dawkins*, 483 S.W.3d 1, 12–13 (Tex. 2016). We look to all the language in such deeds to deduce intent. *Id.* at 14.

To assist in these deductions, *Van Dyke* recognized that "[a]ntiquated instruments that use 1/8 within a double fraction raise a presumption that 1/8 was used as a term of art to refer to the 'mineral estate.'" 668 S.W.3d at 359. This presumption, which aims to ascertain

the meaning of the language the parties used, stems from a widespread but erroneous historical view among oil-and-gas parties: that 1/8 was the maximum conveyable interest, leading to deeds with double fractions such as "1/2 of 1/8" when a party sought to convey half of its entire interest, and not merely 1/16 of it. *See id.* at 357, 363.

The court of appeals in this case began as *Van Dyke* directed but did not follow it to the end. As *Van Dyke* explained, "when courts confront a double fraction involving 1/8 in an instrument, the logic of our analysis . . . requires that we *begin* with a presumption that the mere use of such a double fraction was purposeful and that 1/8 reflects the *entire* mineral estate, not just 1/8 of it." *Id.* at 364. We italicized the word "begin" to underscore that identifying a relevant double fraction is an important step—but only the first step. We were emphatic in stating that the double-fraction "presumption is readily and genuinely rebuttable." *Id.* If textual "provisions—whether express or structural—illustrat[e] that a double fraction was in fact used as nothing more than a double fraction, the presumption will be rebutted." *Id.* at 359. Thus, if a deed contains "express language, distinct provisions that could not be harmonized if 1/8 is given the term-of-art usage . . . , or even the repeated use of fractions *other* than 1/8 in ways that reflect that an arithmetical expression should be given to all fractions within the instrument," then courts should treat 1/8 as a fraction bearing its ordinary numerical value and then multiply the fractions to ascertain the conveyed interest. *Id.* at 364–65.

The use of 1/8 in this case's deed implicates the *Van Dyke* presumption, but the deed's language amply contains the kind of textual indicia we described as sufficient to rebut that presumption. The deed

6

conveys "an undivided one-one hundred and twenty-eighth (1/128) interest in and to all of the oil, gas and other minerals in and under" specified tracts of land, with certain interests reserved in the grantors. It withholds the right "to receive any part of any rentals paid under [current] leases" and to receive "any bonus money" in future leases. The deed then grants a "1/128 (1/16 of the usual 1/8 royalty) part of all the oil, gas and other minerals taken and saved under" future leases.

To understand why this text overcomes the presumption, compare it to the language in the instruments we considered in *Van Dyke* and its predecessor, *Hysaw*. The double fractions in those cases were not expressed as a multiplied product. *Van Dyke* concerned a 1/2 of 1/8 interest, *see id*. at 357, and *Hysaw* concerned a 1/3 of 1/8 interest, *see* 483 S.W.3d at 14. In both cases, the Court was asked to determine whether the term "1/8" should be deemed to represent the entire interest or multiplied out to produce a final fractional interest. The answer, we said in *Van Dyke*, must lie in the text. "[T]here must be some textually demonstrable basis to rebut the presumption," but nothing in that case even remotely did so. 668 S.W.3d at 365. "The use of a double fraction in this deed, combined with the *lack* of anything that could rebut the presumption," led us to "conclude as a matter of law that this deed did not use 1/8 in its arithmetical sense but instead reserved to the . . . grantors a 1/2 interest in the mineral estate." *Id.* at 366.

The deed here, by contrast, contains language in both the granting clause and the future-lease clause that expressly uses "1/128"—the product of two fractions. In the granting clause, 1/128 stands alone, without an attached double fraction. But in the future-lease clause, 1/128 is followed by a parenthetical containing two fractions (1/16 and 1/8) that, multiplied

7

together, produce 1/128. The deed thus uses the double fraction to show its work. By expressly multiplying the fractions to arrive at a *single* fraction, in other words, the parenthetical containing the double fraction explains how the parties reached their 1/128 future-royalty figure. If the double fraction were omitted, the deed would read, "a 1/128 part of all of the oil, gas and other minerals." The explanatory parenthetical should not be given greater weight than the single-fraction product, especially because the same figure is expressed alone in the granting clause. If possible, the 1/128 figure should be read consistently throughout the document.

That consistency is readily achievable here. The granting clause provides for a 1/128 interest. The present-lease clause stipulates the existence of a current 1/8 royalty and provides the grantees "one-sixteenth (1/16) of the royalties provided for in said lease." Multiplying those two fractions yields 1/128, the amount specified in the future-lease clause that directly follows. Thus, we read the text to mean that a 1/128 royalty was to be conveyed on future leases, separate but parallel to a 1/128 existing royalty on then-current leases and the 1/128 interest conveyed in the granting clause. The terms harmonize and the *Van Dyke* presumption is necessarily rebutted.

In some ways, therefore, this case is a photographic negative of *Van Dyke*. There, we identified nothing in the text that could rebut the presumption. *Id.* at 359, 366. Here, what is missing is not textual indicia that press against the presumption but a plausible basis to read the text as doing anything *except* rebutting the presumption.

The universe of double-fraction cases includes many variations, including cases far more complex than either *Van Dyke* or this case. For

all such cases, though, our direction from *Van Dyke* remains applicable: that courts "*begin*" with the double-fraction presumption, *id.* at 364, and then carefully and meaningfully assess any textual provisions asserted by a party as inconsistent with the presumption, *id.* at 364–66. If no such indicia exist, or if they are readily harmonized with the presumption, then courts will deem the presumption unrebutted. The operative terms in the deed in this case, however, clearly establish a "textually demonstrable basis to rebut the presumption," *id.* at 365, so we hold that the deed conveys a 1/128 future-royalty interest.

The terms of the deed also make clear that the future-royalty amount is fixed, not floating. The future-lease clause grants a 1/128 portion of future royalties "given on said land or any part thereof," not on the fraction of the land given to the grantees in the granting clause. Because the future-royalty conveyance comes from the entire original tract, it must be read separately from the granting clause, as an independent conveyance. Thus, the royalty is fixed at 1/128 of production on the land. *Cf. Richardson v. Hart*, 185 S.W.2d 563, 565 (Tex. 1945) (holding that a royalty interest described as "1/16th of 1/8th of all of the oil royalty" was a floating fraction of royalty).

\* \* \*

The deed's language is explicit and unambiguous. Its terms convey a fixed 1/128 nonparticipating royalty interest on future leases. This interpretation resolves any apparent contradictions and allows the deed to be read as a cohesive whole.

9

## B

The Cliftons argue in the alternative that the court of appeals should have remanded the case in the interest of justice for the trial court to consider the presumed-grant doctrine. This argument has considerable force because "[t]he analytical framework introduced in *Van Dyke*, while consistent with our precedents, presents a new legal formulation" that the parties previously had not anticipated. *Thomson v. Hoffman*, 674 S.W.3d 927, 928–29 (Tex. 2023) (citation omitted).

The very fact that the court of appeals relied almost exclusively on *Van Dyke*, which we decided only after this case was submitted on appeal, confirms the point. In *Van Dyke*, moreover, we went to significant effort to explain how the double-fraction presumption sits alongside the presumed-grant doctrine. 668 S.W.3d at 366–68. The precedents of some courts of appeals—including the court in this case—had rigidly demanded proof of a "gap" in the chain of title as an essential element of the presumed-grant doctrine, but our analysis rejected that requirement. *See id.* at 366 & n.7. There is no alleged gap in title here, so it is hard to fault the parties for not having invoked a doctrine that, at the time of the trial-court proceedings and appellate briefing, would have been perceived as meritless, but that after *Van Dyke* was correctly perceived as potentially dispositive.

Nonetheless, because we agree with the Cliftons' interpretation of the deed, we need not decide whether it was error to deny their requested remand. But, as in *Van Dyke*, the presumed-grant doctrine remains relevant to our analysis. In that case, after holding that the presumption was unrebutted, we proceeded to explain how the presumed-grant doctrine helps ensure accuracy in double-fraction cases. Both prongs, albeit in entirely

10

distinct ways, ask the same question: *who owns this property today?*

The double-fraction presumption does that by examining the text of the instrument, which still means today whatever it meant when it was adopted. *See id.* at 360 ("The meaning of an unamended text . . . is unaffected by the passage of time, linguistic developments, or the evolution of usage.").

By contrast, the presumed-grant doctrine is concerned not with textual meaning but with real-world developments. That doctrine, "also referred to as title by circumstantial evidence, has been described as a common law form of adverse possession." *Id.* at 366 (quoting *Fair v. Arp Club Lake, Inc.*, 437 S.W.3d 619, 626 (Tex. App.—Tyler 2014, no pet.)). To prevail, the party pressing the doctrine must establish three elements: "(1) a long-asserted and open claim, adverse to that of the apparent owner; (2) nonclaim by the apparent owner; and (3) acquiescence by the apparent owner in the adverse claim." *Id.* Notably, none of these elements turns on the interpretation of the underlying legal instrument. Nor does the presumed-grant doctrine play any role in interpreting deeds or other instruments. *See, e.g.*, *id.* at 367 n.9.

Both here and in *Van Dyke*, these two distinct inquiries generate consistent answers. In *Van Dyke*, the presumption was *unrebutted*, which pointed in the same direction as the parties' near-century of shared understanding. Here, the *rebutted* presumption points in the same direction as the parties' seven decades of shared understanding. Parallel to *Van Dyke*, the parties' predecessors-in-interest apparently all agreed on what the deed required—namely, a fixed 1/128 royalty interest—and they paid and accepted royalties in accordance with that interest. The Cliftons have alleged, and Johnson does not dispute, that this fixed 1/128 royalty is what

11

has "historically been paid"—for *70 years*. Indeed, a 2020 conveyance to Johnson noted that "[t]he Holcombe Deed has been interpreted as reserving a fixed one of one hundred twenty-eight (1/128) nonparticipating royalty interest," although it disputed that interpretation. That instrument was signed less than a month before Johnson filed this lawsuit.

The confluence in textual interpretation and the parties' shared understanding should seem normal and reassuring, not odd or coincidental. One would expect parties' views of their respective rights, and their corresponding conduct over time, to be consistent with the text of the governing legal instrument. It would be surprising for parties to misinterpret (or disregard) their own legal instrument from the very beginning.

In rare circumstances, however, current property ownership is not consistent with what the instrument's text proclaims. The whole point of adverse possession, for example, is to assert ownership that is *contrary* to a recorded deed. The presumed-grant doctrine plays the same role.

Courts will not find adverse possession or the presumed-grant doctrine to be satisfied easily. *See id.* at 366. But carefully examining properly presented presumed-grant arguments helps courts prevent error. When the doctrine's demanding requirements are met—such as when parties have relied on seven decades of consistent understanding—parsing a complicated text may end up being unnecessary. Suppose that, under the textual analysis, the presumption is (or is not) rebutted. If the parties have nonetheless acted as if the opposite were true for such an extended time, then the court will still apply the presumed-grant doctrine when its requirements are satisfied. The analogy to adverse possession is again helpful. If it is beyond dispute that a claimant has openly and notoriously

12

exercised exclusive dominion over real property for 50 years, it often will not much matter whether the original deed gave the property to someone else.

Thus, as we explained in *Van Dyke*, when the presumed-grant doctrine clearly applies, "a court could dispense with the deed-construction analysis" altogether. *Id.* at 368 n.11. As we said there, and as this case and *Van Dyke* jointly illustrate, the presumed-grant doctrine can benefit *either* party—one who asserts that the double-fraction presumption is unrebutted (as in *Van Dyke*) or one who asserts that it is rebutted (as here).

Had this case arisen after *Van Dyke*, it may have been one in which any deed-interpretation difficulties could have been pretermitted given the conceded seven decades of common understanding and practice. But we need not decide whether the Cliftons have satisfied the presumed-grant doctrine's requirements because, even if they have, applying the doctrine would lead to the same result as our reading of the deed: either way, Johnson is left with a fixed 1/128 royalty.

\* \* \*

The court of appeals' judgment is reversed. The trial court's summary judgment is reinstated.

Evan A. Young
Justice

**OPINION DELIVERED:** March 13, 2026

13